J-A10032-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOANNE JORDAN AND STEPHEN JORDAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1296 EDA 2025 |
| MICHAEL LYNDE, YOUVAL KATZ, PENN HEMATOLOGY AND ONCOLOGY, AND JOHN YOUSSEF | : | |

Appeal from the Order Entered April 17, 2025
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2021-02616

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED JULY 22, 2026**

In this medical malpractice action, Plaintiffs/Appellants Joanne Jordan and Stephen Jordan appeal from the Order entered by the Court of Common Pleas of Bucks County on April 17, 2025, granting summary judgment as to the remaining defendant, Defendant/Appellee, Michael Lynde, D.P.M.  They claim the trial court erred by granting Dr. Lynde's summary judgment motion that asserted a limitations period defense, pursuant to 42 Pa.C.S.A. § 5524, *infra*, when factual questions regarding their diligence to discover the cause of her post-surgical complications existed.  After careful consideration, we reverse and remand for further proceedings consistent with this decision.

_____

[*] Former Justice specially assigned to the Superior Court.

In ***Jordan v. Lynde***, ***et al***, (non-precedential decision) 330 A.3d 817 (Pa. Super. filed December 31, 2024), hereinafter, "***Jordan I***," this Court discussed 62-year-old Joanne Jordan's pre-existing blood clotting disorder and how her reliance on the medication Coumadin to control it affected her response to medical care she received following a March 21, 2019, bunionectomy performed by Dr. Lynde.  Specifically, Dr. Lynde prescribed Bactrim as the post-surgical antibiotic, but Bactrim is contraindicated for a patient on Coumadin therapy.

According to the Jordans' Amended Complaint, the interaction of the two medications not only prevented surgical site healing but also caused an injurious hematoma and related circulatory complications, infections, and tissue damage that required multiple debridement procedures.  It was not until May 22, 2019, they alleged, that Joanne Jordan "was advised, for the first time, there may have been an issue with her treatment, given her problematic recovery, and in particular . . .  the improper administration of Coumadin, a blood thinner, while on Bactrim. . . . Amended Complaint at 8." ***See Jordan I***, at 819.

The trial court's opinion provides an apt summary of the procedural history of this action:

> [The Jordans][fn1] instituted this action against Defendants Michael Lynde, DPM, John Youssef, M.D., Youval Katz, M.D., and Penn Hematology & Oncology (hereinafter "Penn") by filing a Writ of Summons nearly three (3) years ago on May 19, 2021.[fn2] Thereafter, [the Jordans] filed a Complaint on August 10, 2021, and an Amended Complaint on October 28, 2021.  The Amended

- 2 -

Complaint alleges one (1) count of negligence and one (1) count of loss of consortium. Pursuant to the Final Date Certain Case Management Order, discovery was to be completed by August 31, 2023. *See* Order, March 15, 2023, entered by the Honorable Robert O. Baldi.

---

Fn1 [Reference to misspelling of the Jordans' first names in the lower court's caption and in the pleadings. The present caption on appeal has corrected the misspellings.]

Fn2 [Identifying other defendants named in the original Complaint but not in the Amended Complaint.]

---

On October 26, 2023, Defendants Dr. Youssef, Dr. Katz, and Penn Hematology & Oncology filed a Motion for Summary Judgment, asserting (1) [the Jordans] failed to establish a *prima facie* case of negligence by failing to produce an expert report as to those defendants; and (2) the statute of limitations had run by the time [the Jordans] initiated their case. On November 28, 2023, Defendants praeciped their Motion for Summary Judgment at which time [the trial court] had the ability to enter an Order ruling upon Defendants' Motion.

On December 5, 2023, Defendant Lynde filed an untimely Motion, intending to join the other Defendants' Motion for Summary Judgment, for one of the reasons which the other Defendants assert[, namely, that the] Jordans' claims are barred by the statute of limitations. There was a continuance requested by the Jordans; however, the record is devoid of the consent to that continuance request.**fn3** [The trial court] entered the Order at issue in this appeal on December 13, 2023.

---

Fn3 The parties had a mandatory phone conference on December 8, 2023, with the Honorable Robert O. Baldi, whereby [the Jordans] asserted they received consent to extend the time to respond to the pending Motion for Summary Judgment. At this point, however, the Motion for Summary Judgment had already been praeciped and therefore was properly

> before [the trial court]. There was also an email sent to Chambers regarding this extension, although it was sent to the undersigned Chambers *ex-parte* on December 12, 2023. ***See*** Plaintiff's Motion to Reconsider, Exhibit 3, Exhibit 4. [The Jordans'] counsel concedes in a December 21, 2023, email there was no formal filing regarding any consent for an extension.

Trial Court Opinion, 3/12/24, at 1-2.

The Jordans raise the following question for this Court's consideration:

When there are disputed material facts as to when the Plaintiff learned of a Defendant's malpractice, thereby triggering the discovery rule, does the trial court err by granting summary judgment?

Appellants' "Statement of the Question Involved," at 4.

We begin with our well-settled standard of review for appeals from orders granting summary judgment:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no [genuine issue as to any] material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

***Shellenberger v. Kreider Farms***, 288 A.3d 898, 905 (Pa. Super. 2023) (cleaned up).

Statutes of limitations are rules of law that set time limits for bringing legal claims. The time to file begins running "from the time the cause of action accrued[.]" 42 Pa.C.S. § 5502(a).**[fn4]** "Normally, a cause of action accrues when an injury is inflicted.

- 4 -

Thus, the clock begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations[.]" **Rice** [**v. Diocese of Altoona-Johnstown**, 667 Pa. 92, 255 A.3d 237, 246 (2021)] (citations and internal quotation marks omitted).

> Fn4  Negligence claims for alleged misdiagnoses are subject to a two-year statute of limitations.  **See** 42 Pa.C.S. § 5524(7).

> However, where the complaining party is reasonably unaware that his or her injury has been caused by another party's conduct, the discovery rule suspends, or tolls, the running of the statute of limitations.  To successfully invoke the discovery rule, a party must show the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause.  A party fails to exercise reasonable diligence when it fails to make an inquiry when the information regarding the injury becomes available.

**Mariner Chestnut Partners, L.P. v. Lenfest**, 152 A.3d 265, 283 (Pa. Super. 2016) (citations and quotation marks omitted). Although the reasonable diligence standard is an objective one, "it is to be applied with reference to individual characteristics." **Wilson v. El-Daief**, 600 Pa. 161, 964 A.2d 354, 365 (2009) (citation omitted). "Pursuant to the application of the discovery rule, the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue best determined by the collective judgment, wisdom and experience of jurors." **Id**. (citations omitted).

> "[T]he polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff.  The failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law."

**Borough of Mifflinburg v. Heim**, 705 A.2d 456, 467 (Pa. Super. 1997), *appeal denied*, 568 Pa. 642, 794 A.2d 359 (1999) (citation omitted);

**DiDomizio v. Jefferson Pulmonary Assocs.**, 280 A.3d 1039, 1046 (Pa. Super. 2022).

As noted, *supra*, this Court previously summarized the Jordans' Amended Complaint and its relevant assertions of fact bearing on the statute of limitations question of when, through the exercise of due diligence, they would have been placed on inquiry notice that Joanne Jordan's post-bunionectomy wound-healing difficulties were injuries caused by Dr. Lynde's negligent administration of the antibiotic Bactrim, which is contraindicated when a patient is also taking Coumadin, as Jordan was to control circulatory maladies associated with her clotting disorder. **See Jordan I** (vacating as to Dr. Lynde and remanding to permit the Jordans to supplement the record and respond to Dr Lynde's motion for summary judgment). The Amended Complaint avers that after Joanne Jordan's March 21, 2019, bunionectomy, she remained under the care of Penn Hematology & Oncology given her clotting disorder and her lifelong Coumadin anticoagulation therapy. ¶¶ 16–19.

On March 25, 2019, she kept her scheduled post-surgical follow-up appointment and presented with a fever as well as bruising and swelling around the surgical site. Deposition of Stephen Jordan, 2/16/2023 at pp 15-17. The nurse summoned a physician with Penn Hematology to assess, and he advised Jordan to remain on Dr. Lynde's Bactrim protocol and sent her to

see Dr. Lynde that same day. At a March 28, 2019, visit, a nurse practitioner suggested to Jordan that the Bactrim-Coumadin interaction might be affecting her wound healing and causing her fever, but when Jordan asked for guidance the nurse practitioner advised her to continue taking Bactrim according to Dr. Lynde's prescription and she would be monitored. (Exh._Penn Hematology office note). On April 5, 2019, Dr. Lynde noted a worsening of the site, and he performed an April 8, 2019, operation to drain and evacuate the hematoma and excise the necrotic tissue. Amended Complaint ¶¶ 22, 23.

Subsequently, Joanne Jordan would require more surgeries for drainage of the hematoma and debridement of the necrotic tissue. ¶ 24. She was prescribed Coumadin for her bleeding issues and Bactrim as a post-operative antibiotic, ¶ 25, and this treatment continued through April of 2019. ¶ 28. Specifically, Dr. Lynde prescribed Bactrim in early May of 2019, and hematologists at Penn Medicine put her back on Coumadin while she was also taking Bactrim. Amended Complaint, at ¶ 30.

By May 21, 2019, the Amended Complaint continues, Joanne Jordan had developed persistent hemorrhaging, necrosis, lesions, compromise of her peripheral circulation, and the need for further intervention in the form of follow-up debridement surgeries and administration of prescribed medication. *Id*. at ¶ 31. It was not until May 22, 2019, the Amended Complaint avers, that the Jordans were "advised, for the first time, there may have been an issue with her treatment, given her problematic recovery, and in particular . .

. the improper administration of Coumadin, a blood thinner, while on Bactrim . . . ."  Amended Complaint, ¶ 33.

The record of Joanne Jordan's deposition testimony of February 16, 2023, shows that she recalled Dr. McLaughlin, a hematologist, visiting her hospital room on March 28, 2019, after Dr. Lynde had directed her to go to the hospital immediately to have "all the dead tissue" around the surgical site removed.  N.T., 2/16/23, Deposition of Joanne Jordan, at 53-54.  She could not remember anything that Dr. McLaughlin said to her during that initial visit. *Id*. at 54.

She did remember a subsequent visit when Dr. McLaughlin came to her room after one of her three debridement procedures—although she could not remember which one—and told her that he believed the cause (or at least a contributing factor) of her post-surgical complications of hematoma, infection, bleeding of the surgical wound, and increased INR blood level was the administration of Bactrim while she continued receiving Coumadin therapy. *Id*. at 57.   According to the Jordans, Dr. McLaughlin told her, "I'm not going to lie, but you never should have been put back on Coumadin" until the wound was healed.  *See* Deposition of Joanne Jordan, pp. 50-57.

The Amended Complaint's averment that the Jordans were first advised by Dr. McLaughlin on May 22, 2019, that the concurrent administration of Coumadin and Bactrim could be the cause of her poor wound healing, relies on the testimony of Stephen Jordan.  Specifically, he submitted as part of the Jordans' opposition to Dr. Lynde's Motion for Summary Judgment an Affidavit

that the hospital room conversation with Dr. McLaughlin took place not on March 28, 2019, as the Defense alleges, but during Joanne Jordan's post-debridement procedure and hospitalization of May 22, 2019. Joanne Jordan's testimony during her deposition was uncertain as to the date Dr. McLaughlin shared his opinion with her. She stated it was not during her first hospital admission in March but on an unspecified subsequent one. She could not say on which date this occurred because, "you have to remember, I'm on medication for pain, anxiety, I'm weak, I'm sick." N.T. at 57-58.

Dr. Lynde argues that the due diligence standard applicable to Pennsylvania's discovery rule required the Jordans to make a reasonable effort to discover that the concurrent Coumadin/Bactrim therapy was the cause of her debilitating injury, but their claimed discovery date of May 22, 2019, reflects a failure to exercise such due diligence. The Jordans counter that the record shows they continued to make reasonable inquiries by going to the hospital and to Dr. Lynde's office, without delay, when she was experiencing pain and fever. They were relying on the advice of Penn hematologists, who examined her surgical site, discerned the concerning evidence of poor wound healing, and, despite considering the contraindicated combination of Coumadin and Bactrim therapies that would explain the poor wound healing, advised her to follow Dr. Lynde's course of care and sent her to Dr. Lynde.

According to the Jordans' Amended Complaint, at no time prior to Dr. McLaughlin's comment did any medical provider advise them that Joanne Jordan had received anything except appropriate medical care and therapies.

She considered that her difficulties possibly were an effect of her underlying medical conditions and the treatments she was receiving for them, but it was not until May 22, 2019, their Amended Complaint contends, that she "was advised, for the first time, there may have been an issue with her treatment, given her problematic recovery, and in particular . . . the improper administration of Coumadin, a blood thinner, while on Bactrim . . . ." Amended Complaint at 8.

Joanne Jordan's deposition testimony,[1] while not precise as to the date Dr. McLaughlin, a hematologist, allegedly advised her about the contraindication of Coumadin and Bactrim, does indicate that the communication did not occur during her first post-operative visit to the hospital for a debridement. She claimed it was during one of the subsequent ones, which appears to not rule out May 22, 2019, the date alleged in the Jordans' Amended Complaint and Steven Jordan's testimony.

At what point in the post-operative timeline the Jordans reasonably should have discovered that Joanne was injured by another's conduct is a question of fact over which reasonable minds could differ. Our jurisprudence favors resolving such questions before a jury rather than by a trial court in a motion to dismiss.

> As reflected in the parties' arguments, the baseline legal standards are set forth in **Fine** [**v. Checcio**, 582 Pa. 253, 870 A.2d 850, 857–59 (2005)]. Initially, **Fine** reflects the general rule

_____

[1] **See** Pretrial Memorandum, Deposition transcript of Plaintiff, Joanne Jordan, at N.T. 55-57.

that a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted. ***See id.*** at 266, 870 A.2d at 857 (citation omitted). In certain cases involving latent injury, and/or instances in which the causal connection between an injury and another's conduct is not apparent, the discovery rule may operate to toll the statute of limitations until the plaintiff discovers, or reasonably should discover, that she has been injured and that her injury has been caused by another party's conduct. ***See id.*** at 268, 870 A.2d at 859.[3] ***Fine*** also reflects that the determination concerning the plaintiff's awareness of the injury and its cause is fact intensive, and therefore, ordinarily is a question for a jury to decide. ***See id.*** at 268, 870 A.2d at 858. However, courts may resolve the matter at the summary judgment stage where reasonable minds could not differ on the subject. ***See id.*** at 268, 870 A.2d at 858–59; ***Cochran v. GAF Corp.***, 542 Pa. 210, 216, 666 A.2d 245, 248 (1995) ("[W]e have not hesitated to find as a matter of law that a party has not used reasonable diligence in ascertaining the cause of an injury thus barring the party from asserting their claim under the discovery rule."). The party relying on the discovery rule bears the burden of proof. ***See id.*** at 216, 666 A.2d at 249.

***Wilson***, 600 Pa. 161, 964 A.2d at 361–62.

The Jordans' Amended Complaint avers that at the relevant time they did not receive a medical explanation for Joanne's excessive bleeding, accumulation of dead tissue, and overall poor wound healing at and around the bunionectomy surgical site. The negligence of administering concurrent Coumadin and Bactrim therapies prescribed by Dr. Lynde and tacitly supported by Penn Hematology could not have been discovered through their own diligence, the Jordans posit, and they believed at the time that their continued efforts to seek Dr. Lynde's and Penn Hematology's review of her post-operative difficulties were appropriate and diligent.

They averred that they continued to look for answers by keeping Joanne's medical appointments and asking questions, but they received a

- 11 -

skeptical medical opinion about the concurrent Coumadin/Bactrim therapy only when Dr. McLaughlin first expressed his concerns to them. That discussion, they allege, occurred on May 22, 2019, one day after Joanne Jordan was admitted to the hospital for continuing problems with hemorrhaging, necrosis, and lesions compromising her peripheral circulation and the need for further surgery to her foot. Amended Complaint at ¶ 32.

Defendants/Appellees dispute this date. They maintain that the exercise of reasonable diligence in ascertaining the alleged cause of Joanne Jordan's injury would have enabled discovery no later than late March of 2019, after the Jordans knew Joanne presented with a serious wound healing problem immediately after her surgery but took no reasonably diligent steps to discover its cause.

Finally, the trial court determined that the Jordans are held to a discovery date of April 18, 2019, although it does not make explicit what part of the record supports this date. It may be that the trial court has determined that among the "many subsequent hospital stays" Joanne Jordan required after her March 19 debridement procedure, one occurred on April 18, 2019, and that was when Dr. McLaughlin first shared his opinion that negligent post-surgical administration of Coumadin and Bactrim caused her post-operative tissue damage and poor wound healing at the surgical site.

Our jurisprudence directs that factual disputes pertaining to the date on which plaintiffs are held to have "discovered" the accrual of a cause of action are better left to juries than to a trial court's review of motions and answers.

- 12 -

***See Wilson***, ***supra***.  Because we conclude that the present matter falls within this category of cases, we remand to the trial court, which shall preside over a jury trial that addresses the question of when the Jordans should have discovered, through reasonably diligent efforts, that Joanne Jordans' chronic post-operative problems were injuries caused by the negligent administration of Coumadin and Bactrim therapies.

Order reversed and remanded for further proceedings consistent with this decision.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>7/22/2026</u>